IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIE SUTLOVICH,

*Plaintiff*,

v.

LVNV FUNDING, LLC, *et al*,

*Defendants*.

Civil Action No. 2:24-cv-1739

Hon. William S. Stickman IV

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Christie Sutlovich ("Sutlovich") brought this action in the Court of Common Pleas of Allegheny County, Pennsylvania at Docket No. AR-24-007182. (ECF No. 1-1). Defendant LVNV Funding, LLC ("LVNV") removed the case to federal court. (ECF No. 1). Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, Sutlovich seeks damages, costs and attorney's fees, and other relief for LVNV's allegedly false and inaccurate representation of the character and legal status of her debt.[1] (ECF No. 18, ¶¶ 40–48). She claims that: (1) LVNV's failure to communicate the disputed status of her debt to credit reporting agencies violated § 1692e(2)(a) of the FDCPA, (2) LVNV's false and inaccurate representation of her debt's legal status was a communication of credit information which it knew or should have known to be false in violation of § 1692e(8), and (3) LVNV's willful communication of false credit information

[1] Sutlovich also named Pressler, Felt & Warshaw, LLP ("PFW") as a defendant, and claimed that it violated 15 U.S.C. §§ 1692e and 1692d of the FDCPA. (ECF No. 18, ¶¶ 66, 70). Following a joint stipulation of dismissal with prejudice, PFW was terminated as a party. (ECF Nos. 35, 36).

harassed, oppressed, and abused her in violation of § 1692d. (*Id.* at ¶¶ 40–46).[2] Discovery is complete and pending before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 39, 42). For the reasons set forth below, the Court holds that it lacks subject-matter jurisdiction over Sutlovich's claims. Accordingly, it will deny the motions as moot and remand the case to state court.

## I. FACTUAL BACKGROUND

LVNV acquired two credit card accounts that Sutlovich originally owed to Credit One Bank, N.A. (ECF No. 41-2, pp. 2, 6). The two accounts had outstanding balances of $2,067 (the "$2,067 account") and $1,378 (the "$1,378 account"). (*Id.*). According to Sutlovich, the "account at issue" in this case—*i.e.*, the account that LVNV allegedly failed to report as "disputed" in violation of the FDCPA—is the $2,067 account. (ECF No. 44, ¶ 16; ECF No. 51, ¶ 16). Prior to this suit, LVNV sued Sutlovich in Pennsylvania Magisterial District Court on August 12, 2024, to recover the $1,378 account. (ECF No. 41, ¶ 2; ECF No. 49, ¶ 2; ECF No. 45-10). After LVNV initiated that suit through collection counsel, Sutlovich retained her current counsel on August 30, 2024, to defend against the suit. (ECF No. 45-13). On that same day, counsel for Sutlovich sent a letter to LVNV, stating that "at all times relative hereto, we are disputing this debt, any related debt(s) and/or credit account(s) your company claims to have sold, purchased, and/or assigned from yourself, another creditor, debt buyer or other entity as of the date of this letter … under the FDCPA, FCRA, FCEUA and/or the UTPCPL." (ECF No. 45-12, p. 3). The letter omitted an account number in reference to the dispute, but it expressly referenced the magisterial district court

[2] The Court briefly notes that nothing in the record could support Sutlovich's claim under § 1692d. There is no evidence that LVNV took any actions against her that were abusive, harassing, or oppressive in the collection of her debts, nor does she set forth any facts that were adduced in discovery to support such a claim.

docket number associated with the suit regarding the $1,378 account. (ECF No. 45-12, p. 2; ECF No. 45-10). Resurgent Capital Services' ("Resurgent") dispute team received the letter on September 6, 2024, and marked the $1,378 account as disputed. (ECF No. 44, ¶ 49; ECF No. 51, ¶ 49). However, LVNV did not mark the $2,067 account as disputed. (ECF No. 51, ¶ 49). That alleged omission is the basis of this suit.

LVNV is a "passive debt acquisition entity" and Resurgent is LVNV's master servicer. (ECF No. 45-6, p. 17). In that role, Resurgent acts on behalf of LVNV to handle day-to-day account servicing, credit reporting, and dispute intake. (*Id.* at 16–17). Resurgent attempted to contact Sutlovich on October 22, 2022, to inform her that LVNV had purchased the $2,067 account from Credit One and that, effective October 18, 2022, it had been placed with Resurgent for servicing. (ECF No. 41-2, p. 6). That communication was by letter, and that letter displayed the last four digits of the $2,067 account number, the original creditor (Credit One Bank, N.A.), the current owner (LVNV Funding, LLC), the reference ID, the balance ($2,067), and the account holder's name (Christie Sutlovich). (*Id.*). The letter offered "multiple ways to communicate," including 24/7 access to an online portal and a number to call Resurgent's "friendly and professional customer care team" who would be "pleased to discuss" Sutlovich's payment options. (*Id.*). The letter also stated that Sutlovich could expect to hear from Resurgent over the coming weeks via email. (*Id.*).

On its next page, the Resurgent letter stated "**Please read the following important notices, including the enclosed validation notice, as they may affect your rights**. This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector." (*Id.* at 7) (boldface in original). Then on its final page, the letter stated again that Sutlovich owed $2,067 to LVNV, and Resurgent was trying to collect the debt on its

behalf. (*Id.* at 9). In large distinct boldface text, there was a subheading on the right-hand side that stated "**How can you dispute the debt?**" (*Id.*) (boldface in original). Below that subheading, it said:

- **Call or write to us by November 24, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by November 24, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

(*Id.*) (boldface in original). Another subheading was beneath that stating "**What else can you do?**" (*Id.*) (boldface in original). Below that, the text read:

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by November 24, 2022, we must stop collection until we send you that information. You may use the form below or write to us without the form.
- **Go to <u>www.cfpb.gov/debt-collection</u> to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.

(*Id.*). Finally, the letter asked "**How do you want to respond?**" (*Id.*). It said the following below that heading:

*Check all that apply:*

□ **I want to dispute the debt because I think:**

□ This is not my debt.

□ The amount is wrong.

□ Other (please describe on reverse or attach additional information).

□ **I want you to send me the name or address of the original creditor.**

□ **I enclosed this amount: $ ______**

(*Id.*) (boldface and italics in original). Each option was accompanied by a box to check, allowing Sutlovich to indicate how she wished to proceed.

In her deposition, Sutlovich explained that she never viewed the letter above. When asked if she had been receiving collection notices in the mail prior to the 2024 lawsuit filed against her,

Sutlovich responded "probably." (ECF No. 45-2, p. 27). She stated that she was not aware if she had received mail from LVNV or anybody acting on its behalf prior to being sued by LVNV; however, if she did, she said that she probably looked at the mail and then threw it away because she did not recognize the sender. (*Id.* at 27, 40). She agreed that the letter was correctly addressed to her and that it concerned the $2,067 account. (*Id.* at 39). But again, she testified that she would not have opened the letter upon receiving it, and would have thrown it away because she did not know who or what LVNV was. (*Id.* at 40). She did not recognize Resurgent either and had no recollection of receiving any correspondence that Credit One had sold her accounts to LVNV, although she stated that she might have. (*Id.* at 40). When asked whether she ever disputed the debt underlying the $2,067 account in response to the letter, she replied "I have no idea." (*Id.* at 41). She never called or wrote to Resurgent because she would not have read mail sent by Resurgent, and she only attempted to dispute her debts owned by LVNV after LVNV had initiated collection lawsuits against her. (*Id.* at 41–42).

With respect to LVNV's reporting of her debt and its legal status, Sutlovich testified that she doesn't know if the $2,067 account tradeline is on her credit report because she doesn't "pay much attention to [her] credit." (*Id.* at 30). Instead, she only learned that LVNV had not reported the $2,067 account as "disputed" through counsel. (*Id.* at 37). As to the "annoyance, anxiety, embarrassment, emotional distress, and severe inconvenience" her complaint alleges that she has experienced because of LVNV's collection activity, Sutlovich explained that those feelings stem from having to miss work for her deposition and general worry about how this case will be resolved. (*Id.* at 32–33). She clarified that no direct contact undertaken by LVNV has caused her

those feelings, and LVNV has not contacted her or otherwise interacted with her besides its initiation of its collection lawsuits in magisterial district court. (*Id.* at 33–35).[3]

It is undisputed that the $2,067 account was first marked as "disputed" on December 3, 2024. (ECF No. 44, ¶ 61; ECF No. 51, ¶ 61). Therefore, Sutlovich focuses on two instances between September 6, 2024 (when Resurgent received Sutlovich's dispute letter) and December 3, 2024, where LVNV, through Resurgent, furnished credit reporting tradelines for the $2,067 account where it was allegedly not marked as disputed. Sutlovich asserts that these instances occurred on October 2, 2024, and November 5, 2024. (ECF No. 44, ¶ 60). As proof of this, Sutlovich offers a copy of her October 25, 2024, TransUnion Personal Credit Report, which reflects that her $2,067 account with LVNV was placed for collection on October 17, 2022, was "updated" on October 2, 2024, and had a "pay status" of "in collection" at that time. (ECF No. 45-4, p. 6).

LVNV disputes that Sutlovich's August 30, 2024, dispute letter rendered the $2,067 account a "disputed debt" and that Resurgent's subsequent furnishing of tradelines related to it violated the FDCPA. (ECF No. 51, ¶ 60). While Sutlovich maintains that the letter did have that purpose and effect, the parties do not dispute that the letter did not list specific account numbers within its text. (ECF No. 41, ¶ 12; ECF No. 49, ¶ 12; ECF No. 45-12).

---

[3] Sutlovich only became aware that LVNV was attempting to collect on the $2,067 account when it sued her in Pennsylvania Magisterial District Court. The Court notes that, for reasons beyond the record, that lawsuit was withdrawn on November 12, 2024. No hearing occurred, and it appears to be the last action LVNV took with respect to collecting the $2,067 account. *See LVNV Funding LLC v. Sutlovich*, No. MJ-05205-CV-0000201-2024 (Pa. Magis. Dist. Ct. September 1, 2026), *https://ujsportal.pacourts.us/Report/MdjDocketSheet?docketNumber=MJ-05205-CV-0000201-2024&dnh=H94RylrhrlKgl7cMU6yStQ%3D%3D*. The Court may consider matters of which it may take judicial notice, including matters of public record like the public docket sheets. *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("[D]ocket sheets are public records[ ] of which this court may take judicial notice …" (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).

## II. Standard of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 2016)). If upon review of a party's motion for summary judgment, the Court, viewing the evidence in the light most favorable to the nonmoving party, enters summary judgment for the moving party, it may declare the opposing party's cross-motion for summary judgment moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205–06 (3d Cir. 2017).

## III. Analysis

Before discussing the pending motions, the Court notes that the parties dispute some threshold issues that are immaterial to its judgment and are resolved by the record. First, LVNV

argues that Sutlovich's $2,067 account does not represent a consumer debt as defined by the FDCPA.[4] (ECF No. 40, p. 4). However, the record demonstrates that it does. Under the FDCPA, a "debt" is "any obligation … of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes…." 15 U.S.C. § 1692a(5). Here, the record shows that Sutlovich used the $2,067 account to pay merchants like Sheetz, Ross Stores, EZ-Pass, Amazon, AT&T, and Famous Footwear. (ECF No. 45-3, pp. 4, 7, 10–11, 14–19). The Court holds that the evidence is clear that Sutlovich used the $2,067 account for personal transactions instead of business purposes, and it is a "debt" within the meaning of the FDCPA.

LVNV further argues that it is a not a "debt collector" under the FDCPA. (ECF No. 40, pp. 4–5). The United States Court of Appeals for the Third Circuit has held that if the "principal purpose" of a debt purchaser's business is the collection of any debts, then that entity is a debt collector. *Barbato v. Greystone All., LLC*, 916 F.3d 260, 267–268 (3d Cir. 2019) (citation omitted). The presence of a "middleman," like Resurgent, does not change the essential nature of LVNV's business. *Id.* at 268. "An entity that otherwise meets the 'principal purpose' definition

[4] To state a claim under the FDCPA, a plaintiff must prove that (1) the plaintiff is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged conduct involves an attempt to collect a debt, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citation omitted). "[A]ny lender-debtor communications potentially giving rise to claims under the FDCPA . . . [must] be analyzed from the perspective of the least sophisticated debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006). This is an objective standard, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Moyer*, 991 F.3d at 470 (citation omitted). The least sophisticated debtor standard "protects naive consumers," but "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Brown*, 464 F.3d at 454 (citation omitted); *see also Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Even the least sophisticated debtor is bound to read collection notices in their entirety.").

cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting." *Id.* at 261. Here, LVNV is a "passive debt acquisition" company who purchases debts so that it can collect them. (ECF No. 45-6, p. 17; ECF No. 41-2, p. 6). Resurgent is its "master servicer" who collects debts owned by LVNV and acts on its behalf. (ECF No. 45-6, pp. 16–17; ECF No. 41-2, pp. 6–9). Thus, the Court holds that LVNV's business is squarely within the definition of "debt collector" as defined by the Third Circuit, and its relationship with Resurgent does not change that.

While the FDCPA applies to LVNV and its actions relating to Sutlovich's $2,067 account, the Court holds that Sutlovich has failed to adduce evidence demonstrating a concrete injury under Article III of the United States Constitution. The issue of Article III standing was not raised by the parties in their motions. Nevertheless, the Court, after review of the parties' pleadings and the evidence of record, must raise the issue of standing *sua sponte* as it is abundantly evident that Sutlovich has not suffered a concrete injury. *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 64 (3d Cir. 2016) (citing *Steele v. Blackman*, 236 F.3d 130, 134 n. 4 (3d Cir. 2001)); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised … by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").

Article III grants federal courts "judicial power" to resolve "Cases" and "Controversies." U.S. CONST. art. III, §§ 1–2. Thus, plaintiffs seeking to vindicate their rights in federal court must satisfy Article III's standing requirements. *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 141 (3d Cir. 2024) (citations omitted). "Standing consists of three main components: (1) an injury in fact that is concrete and particularized, (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable judicial decision." *Id.* (citations omitted).

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). While courts must respect Congress's decision to impose a statutory prohibition or obligation on a defendant, Congress may not simply enact an injury into existence. *Id.* at 425–426. Thus, a plaintiff cannot automatically satisfy Article III's injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Id.* at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III. *Id.* Thus, only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court. *Id.* at 427 (emphasis original).

History and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider. *Id.* at 424 (citations omitted). The Supreme Court of the United States has directed that courts should assess whether the alleged injury to a plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *Id.* (citing *Spokeo*, 578 U.S. at 341). While it does not require an exact duplicate, that inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury. *Id.* A "concrete" harm for purposes of Article III may be tangible or intangible. *Id.* at 425. Traditional tangible harms, such as physical harms and monetary harms, are the most obvious injuries-in-fact. *Id.* But various intangible harms can also be concrete, chiefly those with a close relationship to those traditionally recognized as providing a basis for a

lawsuit in American courts. *Id.* For example, these include reputational harms, disclosure of private information, and intrusion upon seclusion. *Id.* (citations omitted).

The requirement of an injury as an element of standing is essential to suits under consumer protection statutes like the FDCPA. *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021) (citing *Spokeo*, 578 U.S. 330 (2016)); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (stating that the FDCPA was enacted to protect consumers). Accordingly, a plaintiff cannot claim "a bare procedural violation [of the FDCPA], divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (quoting *Spokeo*, 578 U.S. at 341). Thus, even assuming that Sutlovich effectively disputed that she was responsible for the $2,067 account, she must have suffered some actual harm from LVNV's omission in reporting that dispute for redress in federal court.

The Third Circuit has instructively applied the standing principles set forth in *Spokeo* and *TransUnion* in the FDCPA context. In *Barclift*, it stated that district courts are to examine the "kind of harm at issue." *Barclift*, 93 F.4th at 145. While a plaintiff need not exactly duplicate a traditionally recognized harm, she must still analogize to a harm of the same character of previously existing "legally cognizable injuries." *Id.* at 146 (citations and internal quotations omitted). The district court in *Barclift* had to determine whether the plaintiff's analogy of her alleged harm under 15 U.SC. § 1692c(b)—a FDCPA provision that bars debt collectors from communicating with third parties in connection with a debt absent prior consent from the debtor—to the common law tort of "unreasonable publicity given to another's private life," also known as "public disclosure of private information," was sufficient to assert a concrete injury. *Id.* at 140, 145. In her original complaint, Barclift alleged that she suffered embarrassment and stress, as well

as an invasion of privacy and reputational harm, from the defendant's communications with a mailing vendor without her consent. *Id.* at 140. After that complaint was dismissed for lack of standing, Barclift amended her complaint to add allegations regarding the defendant's mishandling of sensitive consumer information. The district court then dismissed her amended complaint for lack of standing too, holding that it still had not pled a concrete injury. *Id.* On appeal, the Third Circuit affirmed the district court's dismissal for lack of standing holding that Barclift had not asserted a concrete injury beyond a procedural FDCPA violation. *Id.* at 148.

Here, Sutlovich did not identify a close historical or common-law analogue for the kind of harm she allegedly suffered from LVNV's violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(8). Nevertheless, the Court's analysis begins with the text of 15 U.S.C. §§ 1692e(2)(A) and 1692e(8) and emphasizes their text as relevant here. Section 1692e states "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A) makes unlawful the "false representation of … the character, amount, or **legal status** of any debt," and § 1692e(8) makes unlawful "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, **including the failure to communicate that a disputed debt is disputed.**" §§ 1692e(2)(A); 1692e(8) (emphasis added).

Under § 1692g(a), a debt collector is required to include the following information in a debt collection letter to a consumer:

1) the amount of the debt;
2) the name of the creditor to whom the debt is owed;
3) a statement that unless the consumer, within thirty days after receipt of notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the

consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and;

5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Paragraphs 3 through 5 of § 1692g(a) contain the FDCPA's "validation notice." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353–354 (3d Cir. 2000). If a consumer fails to dispute a debt within the thirty-day period as defined by statute, then a debt collector can assume the debt is valid.

Sutlovich did not submit her dispute letter in response to Resurgent's attempts at communicating with her, and having not viewed the letter when it was sent, does not allege any harm related to the letter.[5] But contrary to LVNV's assertion, failure to dispute the debt within the statute's 30-day verification period does not preclude suit under 15 U.S.C. § 1692e. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247–248 (3d Cir. 2014); (ECF No. 40, pp. 6–9).

While Sutlovich was entitled to dispute her debt beyond that period, she still had to show for purposes of this lawsuit that she suffered some concrete harm from LVNV's failure to report her dispute. She has not made such a showing. She has not come forth with any evidence that the kind of harm she has suffered is more than a "bare procedural violation." Sutlovich has expressly stated that the absence of a dispute note on her credit report did not cause her any harm. (ECF No. 45-2, p. 37). Courts facing similar allegations and facts have found that the plaintiffs failed to establish Article III standing, and this Court must do the same. *See Feist v. Arcadia Recovery*

---

[5] The Court notes that the letter sent from Resurgent to Sutlovich complied with all the requirements of 15 U.S.C. 1692g(a). (ECF No. 41-2, pp. 6–9). But even if it had not, courts have found that such a violation absent a showing of concrete harm does not convey standing. *See Casillas*, 926 F.3d 329, 331–332 (7th Cir. 2019) (stating "no harm, no foul" where a plaintiff alleged receipt of an incomplete communication under §1692(g)(a) but no other harm).

*Bureau, LLC*, No. 21-2015, 2022 WL 4331583 at *3 (E.D. Pa. Sept. 19, 2022) (stating that plaintiff lacked Article III standing where she alleged a bare procedural violation of the FDCPA and "[no] injuries whatsoever in her complaint"); *Barclift v. Keystone Credit Servs., LLC*, 585 F.Supp. 748, 750 (E.D. Pa. 2022) ("Does a simple procedural violation of the FDCPA automatically establish a concrete injury, thereby providing the basis for plaintiff to sue? This court concludes that based on the particular facts of this case, it does not."). Because Sutlovich has not suffered a concrete injury, she lacks Article III standing. Accordingly, the Court is deprived of subject-matter jurisdiction over this matter. This case must be remanded to the Allegheny County Court of Common Pleas.[6] The Court will deny the parties' cross-motions as moot.

## IV. CONCLUSION

For these reasons, the case will be remanded to state court and the Court will deny the motions for summary judgment as moot. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 9/14/26

[6] If a federal court determines that it lacks subject-matter jurisdiction over a removed case at any time before final judgment, remand to the appropriate state court is mandatory even if doing so may be futile. *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213–214 (3d Cir. 1997) (citing 28 U.S.C. § 1447(c)).